[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 628 
At the conclusion of the plaintiff's case the defendants moved for a dismissal of the action and the Court, at that time, reserved its ruling on that motion and directed the defendants to proceed with their defense.
After both sides rested the defendants then moved for a directed verdict in favor of the defendants as against the plaintiff and the Court now has that motion before it for disposition.
The plaintiff has discontinued as to the second and third counts.
Therefore, this motion is addressed to the first count of the second amended complaint. For the purposes of this motion, the Court must necessarily consider all of the pleadings as they are a part of the record. It must further necessarily consider all of the several allegations set forth in the complaint now *Page 629 
before the Court for consideration in connection with this motion.
The complaint alleges in the first count that on March 15, 1943, the date of the accident and for a long time prior thereto, the defendant, Tide Water Associated Oil Company, referred to hereafter as Tide Water, owned certain lands and premises constructed for and used as a gasoline service station, at the corner of Morris and Lincoln Streets, Phillipsburg, Warren County, New Jersey. This station was used for the purpose of selling Tide Water products and also for the purpose of performing various services for the public.
The complaint further alleges that this station was one of a number or chain owned by Tide Water, and it charges that prior to March 15, 1943, the defendant, Tide Water, leased the said station to one J. Stuart Hamlen, and that under and by virtue of said lease, said Hamlen, on March 15, 1943, date of accident, was operating this station.
The allegation in the complaint is that under the said lease that Tide Water agreed to make all repairs and replacements. The lease, itself, provides just the opposite to this allegation.
It is alleged, and the lease provides, for this tenant to permit the defendant, Tide Water, to enter and inspect the leased premises at any time.
The remaining allegations in paragraph 3(a) are contrariwise to the provisions of the lease.
A copy of the lease, and it is admitted it was reformed by the Court of Chancery, to include the station, is attached to the complaint and marked Schedule A. The lease, and the agreement of counsel, as to the reformation of lease aforesaid, are also in evidence.
All the other allegations of the complaint have been considered by the Court on this motion.
Admittedly, the plaintiff, Mr. Bernard A. McClafferty, was, on March 15, 1943, and had been since March 30, 1939, the date of the lease, and even before then; (in fact Mr. McClafferty had been a gas station attendant and experienced in the duties of such, since 1929); employed at this said station, and was so employed, of course, as I have stated, on March 15, 1943, the *Page 630 
date of the accident, by Mr. J. Stuart Hamlen, the tenant of defendant.
The defendant, Ferd Linneman, admittedly was an employee of Tide Water for several years, and was such on the date of the accident, March 15, 1943, and still is their employee.
The plaintiff contends, and the evidence discloses, that while he was discharging his duties as an employee of Hamlen on the leased premises on March 15, 1943, in closing the north door, that is one of the overhead doors of the lubritorium, the rope attached to that door broke, and the plaintiff offers testimony that a piece twelve inches long broke off from the end of the rope; this alleged piece of rope is not produced in evidence. The plaintiff testified that this rope broke while he was pulling on it to close this north overhead door in the lubritorium.
The plaintiff's counsel advances as the theory upon which they base their claim, and upon which this case is presented, that the defendant, Tide Water, was in control of and retained and exercised control of the station, the door and the rope, and had the duty of exercising reasonable care to inspect the rope and to keep it in safe condition for use by the plaintiff, and that its failure so to do was negligence. The entire complaint, of course, must as I have already indicated, receive the consideration of the Court.
Mr. McClafferty, the plaintiff, alleges that after the rope broke, he fell to the bottom of the grease pit in the lubritorium, and suffered severe and permanent injuries, which he claims will disable him for life. He presents a sympathetic appeal; and of course, this Court is not without sympathy; but necessarily is controlled by duty as it determines the question before it.
Now, Mr. Hamlen admits that he was a tenant of the Tide Water under the lease at the time of the accident. The evidence discloses that a week or so after the accident the Tide Water replaced the broken rope on that door. There are two similar overhead doors in the lubritorium.
As I say, the plaintiff's theory of the case, is that Tide Water owed a duty to the plaintiff to exercise reasonable care in its maintenance, care, inspection and replacement of the rope on *Page 631 
the door which broke, causing the accident, and also inspection, care and maintenance of the door.
The evidence discloses that the rope had been on the door since 1936 when the lubritorium was built; that it was worn, but there is no evidence that it was dangerous to use it. The plaintiff, himself, testified as I recall his testimony, in the following manner, he said: "The rope was in a worn condition but I didn't think it would break. I saw its condition. I knew the rope had broken several times."
Mr. Hamlen, himself, testified as I recall his testimony: "I wouldn't say the rope was rotten; it was worn."
There is no evidence that the defendant ever inspected said rope, or that its condition was called to the defendant's attention, or that they were ever asked to replace the same.
The plaintiff urges that the defendant had a duty to inspect, but the lease does not impose such a duty. It merely permits the defendant to enter and inspect; it gives Tide Water permission to inspect, but it creates no duty so to do. Therefore, its failure alone to inspect, without a duty, would under no circumstances charge it with any negligence, if there was any in its failure to inspect.
The plaintiff's case, as I understand it, rests practically solely on its theory that the defendant, Tide Water, landlord of Hamlen, the tenant, employer of the plaintiff, McClafferty, exercised control over the door and the rope. Its proof consists solely in the fact that a week or ten days after the accident, the defendant replaced the rope and that in 1941 it painted the door. Under all of the facts and the proof in this case, can that evidence, alone, be sufficient to present a fact question for the jury on the question of control: I think not from a consideration of the pleadings and all the evidence.
The leading case on contract, of course, is Clyne v. Helmes,61 N.J.L. 358 (Sup.Ct. February Term 1898). The cases referring to where a landlord exercises control over parts of a premises used in common by his tenants, cannot be helpful to the plaintiff's position. This is also true of all of the cases referring to entering, inspecting and repairing premises where there was a common use. Of course it has been held that repairs *Page 632 
made after an accident to the specified part of the premises causing the accident may be considered as evidence of control alone but not of negligence. Dubonowski v. Howard SavingsInstitution, 124 N.J.L. 368, (E. A. April 18, 1940). This Court sat in that case.
The plaintiff here relies largely on Monohan v. Baime,125 N.J.L. 280 (E. A. October 10, 1940). In that case, too, this Court sat. I can find from the facts in the instant case and the proof no analogy to the rule of law laid down there. The leases are in opposition.
The plaintiff also relies on the case of Dubonowski v. HowardSavings Institution, supra. The factual situation was entirely different from the situation here presented. This is equally true of Taylor v. Majestic Building Loan Association, 14 N.J.Miscellaneous, 699 (Sup. August 6, 1936).
Even if control and possession had remained in defendant, Tide Water, the condition plaintiff complains of, could only be chargeable to the landlord, the corporate defendant, if by the exercise of reasonable care it could have discovered the condition and the unreasonable risk involved therein, and could have made the condition safe. Section 360, Restatement of theLaw of Torts.
The evidence is clear and positive that the plaintiff, himself, could not see or determine that this rope or its condition was dangerous, merely that it was worn and he did not think it would break. The rope is in evidence and from an inspection or observation of same, it would appear that is the fact. So where could there be a negligent act by the defendant? I fail to see any evidence raising any factual question of negligence by either or both of these defendants. The defendant, Tide Water, did not have possession. The tenant, Hamlen, admits he was in possession.Colligan v. 680 Newark Avenue Realty Corporation,131 N.J.L. 520 (E. A. April 20, 1944), LaFreda v. Woodward,125 N.J.L. 489 (E. A. October 10, 1940).
If the condition of the rope was such, if control was established, to make it appear from inspection to be dangerous to use, then in the use thereof the plaintiff, under the evidence in this case, would be chargeable in assuming the risk, provided, *Page 633 
as I say, it was obvious that it was dangerous, and it would have to be shown with control to present any element of negligence. Otherwise it would be a latent defect, and under the proofs here before us the plaintiff's case would fall. The defense of contributory negligence, likewise under the foregoing facts, would bar the plaintiff's recovery.
This plaintiff was under no obligation to use this rope. He could have refused, but, of course, he admits he did not think it would break, that its condition was not obvious; that is any condition that it was dangerous. That, it seems to me, is the purport of his testimony on that question.
The lease, itself, provides among other things: "To permit the lessor to enter and inspect the premises at any time —". "Lessee to maintain, care for and keep said demised premises in good repair and condition, and make and do all repairs andreplacements required to be done." In Brittain v. AtlanticRefining Company, 126 N.J.L. 528 (E. A. May 1, 1941), it just so happens this Court sat in that case, the Court said at
532: "We are here basically concerned with an ordinary situation of landlord and tenant, with exclusive control of the premises in the tenant and no responsibility for repairs resting upon the landlord. It is true that the tenant was required to sell a minimum amount of the landlord's products and that the landlord routinely sent its agents to inspect the premises. However, such arrangements seem to be quite a logical means whereby the company could increase its sales, and there nowhere appears any interference with the tenant's exclusive responsibility for operation of the premises themselves, as provided in the lease. Certainly, with regard to the question of repairs, the landlord had no responsibility in the absence of a contract to that effect and there is no allegation that the injury resulted from repairs undertaken and improperly made." "A landlord is under no greater duty to persons who come upon the leased lands, by invitation of the tenant, than he is to the tenant himself." LaFreda v.Woodward, supra.
The mere fact alone that defendant, Tide Water, did replace the rope after the accident, does not, in itself, establish under *Page 634 
the pleadings and the evidence in this case sufficient evidence to present a fact question of control.
I also believe that the following cases should be considered. They have been by the Court on its ruling herein. Grugan v.Shore Hotels Finance Exchange Corporation, 126 N.J.L. 257(E. A. February 4, 1941). McCarthy v. Bye, 118 N.J.L. 94,(Sup.Ct. April 17, 1937).
The doctrine of reserved control in our case law seems to be applicable to multiple dwelling houses and common stairway cases in nearly every instance, and not to a case similar to the one now before this Court. The condition of this rope was caused by the use of the rope by the tenant or his agent or servants or employees. It was clearly his duty to replace it, when, as the evidence shows, during his use, it had broken five or six times, and it was being used, not in its original form, that is in the way in which it was attached and constructed when the lubritorium was built. The rope and the door here were part of the demised premises and up to the time of the accident were in tenant's possession and under his control.
I further believe we should read the cases of Hammer v.Vanderbilt, 116 N.J.L. 574 (Sup.Ct. June 26, 1936). The evidence in this case as I view it fails to show a jury question as to the landlord's negligence, or the individual defendant's negligence, or the landlord's control. Trondle v. Ward,129 N.J.L. 179 (E. A. October 15, 1942).
The defendant, Tide Water, did not gratuitously or otherwise, undertake to make repairs to this rope prior to the mishap made the subject of this action. LaFreda v. Woodward, supra, and 32American Jurisprudence, 677.
I am therefore constrained to grant the motion of the defendants for the direction of a verdict in their favor as against the plaintiff.
 *Page 1